IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NICHOLAS WHALEY**, | Case No. 2:21-cv-01254-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CORRECTIONS SERGEANT CAMPOS**; **REGISTERED NURSE PETERSON**, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Plaintiff Nicholas Whaley, ("Plaintiff") appearing *pro se*, brings this action alleging that Defendants Corrections Sergeant Campos and Registered Nurse Peterson subjected him to cruel and unusual punishment and acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Plaintiff is an adult in custody ("AIC") at the Oregon State Penitentiary in Salem, Oregon. His claims relate to his incarceration at the Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. This matter comes before the Court on Defendants' Motion for Summary Judgment. ECF No. 21. Defendants raise two grounds in

PAGE 1 – OPINION AND ORDER

support of their motion. First, that Plaintiff has failed to exhaust his available administrative/grievance remedies before filing this action. And second, to the extent Plaintiff's suit is against Defendants in their official capacities, the claim is barred by the Eleventh Amendment. *Id*. at 2. For the reasons that follow, Defendants' motion is DENIED.

## FACTUAL BACKGROUND

On September 14, 2020, an altercation occurred between two AICs directly in front of Plaintiff's cell in the Disciplinary Segregation Unit. ECF No. 7 at 3. Defendants deployed a chemical agent to subdue the AICs and, "within seconds," Plaintiff experienced "extreme burning to his eyes, lungs and skin" inside his cell. *Id*. at 3-4. Plaintiff "experienced the worst pain he had ever experienced in his life." *Id*. at 3. Plaintiff told Defendants about "the pain and burning he was continuing to experience" and that he suffered from chronic, severe acute asthma and Chronic Obstructive Pulmonary Disease ("COPD"), which is also documented in his medical record. *Id*. at 3-4. Campos arranged for the housing unit to be decontaminated, including Plaintiff's cell but denied Plaintiff's request for a cold decontamination shower "because [Plaintiff] was not directly exposed" to the chemical agent. *Id*. at 4-5.

Plaintiff sent a kite to medical stating that he had "pepper spray in my cell and my eyes, lungs and skin is on fire," he suffered from asthma, and asked for help to get a decontamination shower. *Id*. at 5. Plaintiff saw Peterson and told him he was in "severe pain and burning." *Id*. Peterson checked Plaintiff's blood pressure which "was severely and dangerously high," but failed to do a "full evaluation of Plaintiff's symptoms to determine what affects Plaintiff was suffering that were aggravating Plaintiff's acute asthma and COPD." *Id*. at 5-6. Plaintiff was not permitted to shower until the next day, approximately 18 hours after being exposed to the chemical spray. *Id*. at 5.

PAGE 2 – OPINION AND ORDER

Plaintiff filed a grievance dated September 16, 2020 ("Grievance"), regarding the incident, which states

> On 9-14-20 at 7:15pm[,] [t]here was an altercation directly outside my cell in D.S.U. at T.R.C.I.. Chemical agents were deployed directly in front of my cell and onto my cell door. Within seconds my eyes were burning, my skin was on fire and I was in the worst pain of my life. At 8:00pm I spoke with Mrs. Hall my floor staff and Nurse Peterson about my side effects I was suffering. I also spoke with my Sgt. on duty Sgt. Campos and pleaded with the Sgt. to please allow me to decontaminate, that I felt like I was dying. I was denied and told it was not protocol. That since I was not directly exposed, I'd receive no shower. I didn't get a shower until 9-15-20 at 1:30pm. I also kited Medical and told them I was on fire and needed help. And they said in the kite it[']s up to your floor staff and security. Plus I have really bad asthma.

ECF No. 22 at 41. The Grievance was returned for correction ("First Denial") due to non-compliance with Rule 109. *Id*. at 40. Specifically, the First Denial stated that "[g]rievances must be legible and written within the appropriate space provided." *Id*. Plaintiff was advised that a returned grievance can only be resubmitted twice. *Id*. at 40.

Plaintiff resubmitted his grievance on October 8, 2020 ("Resubmitted Grievance"), re-alleging that he was denied a decontamination shower after the chemical agent was deployed outside his cell door and that he spoke to Campos about the side effects he was suffering. *Id*. at 39. Plaintiff stated that "Campos would not give me a shower and I got put back in my cell for 18 hours, till 1:30pm the next day." *Id*. at 39. Peterson checked Plaintiff's blood pressure, which was "through the roof" while Plaintiff was in "in extreme pain from the side effects of the chemical agents." *Id*. The Resubmitted Grievance was returned for correction a second time ("Second Denial") due to non-compliance with Rule 109, specifically because Plaintiff "ha[d] not met the requirements under 291-109-0210." *Id*. at 38. The Second Denial stated

> You have not demonstrated misapplication of departmental polices, rules or other directives, unprofessional actions of department employees, volunteers, or contractors, inadequate medical or mental health treatment, sexual abuse or sexual harassment or excessive use of force by department employees.

PAGE 3 – OPINION AND ORDER

*Id*.

Plaintiff resubmitted his grievance a second and final time on November 10, 2020 ("Final Grievance"). *Id*. at 6, 32-34. Plaintiff again detailed that he was denied a decontamination shower after the chemical agent was deployed outside and directly onto his cell door, and that Campos denied him the shower because he was not directly exposed. *Id*. at 32. Plaintiff also stated that he spoke with Peterson about the side effects he was suffering from, and that he had sent a kite to medical. *Id*. at 32-33. Plaintiff stated that he had "really bad asthma" and that Defendants denied him a decontamination shower and proper medical treatment. *Id*. at 33. Specifically, Plaintiff stated that Defendants failed to "follow the polic[ies] regarding deployment of chemical spray" and cited to Or. Admin. R. § 291-013-005 through 291-013-0235 regarding use of force. *Id*. at 33. The grievance was returned for correction ("Final Denial") stating that Plaintiff "still ha[d] not demonstrated misapplication of departmental polices, rule or other directives," and that his grievance "contain[ed] multiple issues – no decontamination shower and denied medical treatment." *Id*. at 31. The Final Denial stated that, pursuant to Or. Admin R. § 291-109-0210(1), "[a]n AIC may only request review of **one matter, action, or incident per grievance**." *Id*. (emphasis in original).

Plaintiff filed an appeal on December 11, 2020, stating that "the grievance is all one matter and incident," and incorporated by reference facts alleged in his original grievance and resubmissions. *Id*. at 6, 30.  The appeal was denied because "[t]he grievance rule does not permit a returned grievance or grievance appeal to be appealed." *Id*. at 29.

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

PAGE 4 – OPINION AND ORDER

56(a). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986). In evaluating a motion for summary judgment, the court draws all reasonable inferences in favor of the nonmoving party, and does not make credibility findings or weigh evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In civil actions brought by a *pro se* plaintiff, the court construes the pleadings liberally. *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008).

## DISCUSSION

Defendants argue that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Under the PLRA, incarcerated plaintiffs must exhaust all administrative remedies available to them within the institutions where they are housed before they may bring any federal action challenging prison conditions under 42 U.S.C. § 1983.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). By requiring exhaustion, the PLRA gives prison officials a "fair opportunity to correct their own errors" and creates an administrative record for grievances that may become the subject of federal court complaints. *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006). For purposes of the PLRA, actions brought "with respect to prison conditions" include all actions brought to challenge isolated episodes of unconstitutional or otherwise unlawful misconduct of any kind, as well as prisoner petitions challenging conditions. *See Porter v. Nitssle*, 534 U.S. 516, 532 (2002). Under the PLRA, the court lacks discretion to consider claims challenging prison conditions unless

PAGE 5 – OPINION AND ORDER

the plaintiff has first completely exhausted available administrative remedies before filing the action in federal court. *See id*. at 524.

Because exhaustion of remedies is an affirmative defense, the plaintiff is not required to plead or demonstrate exhaustion before bringing an action challenging prison conditions. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, the defendant has the burden of raising and proving that an incarcerated plaintiff failed to satisfy the PLRA's exhaustion requirement. *See id*.

Here, Plaintiff failed to exhaust his administrative remedies because his grievance was returned to him for correction three times, and he failed to complete the grievance process. Where, as here, a defendant shows that a plaintiff failed to exhaust available administrative remedies, the plaintiff must come forward with evidence that administrative remedies were "effectively unavailable." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). This burden is met when the plaintiff shows that he or she took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the plaintiff's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010). Prison officials need not intend to prevent a plaintiff from accessing administrative remedies in order to render those remedies effectively unavailable. *Id*. The Ninth Circuit recognizes that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).

> To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations. A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.

*Id*. at 823-24.

In his response, Plaintiff argues that the grievance process was effectively unavailable to him because "his grievance regarding the incident was returned to him three times for correction, each time with a different reason stated by the grievance coordinator for the grievance being returned for correction." ECF No. 27 at 3-4. Plaintiff contends that "the grievance coordinator intended from the beginning" to make Plaintiff exhaust his three attempts to correct his grievance "so that Plaintiff's grievance would fail." *Id*. at 4.

Plaintiff's Grievance was first returned for correction for noncompliance with Rule 109 because "[g]rievances must be legible and written within the appropriate space provided." ECF No. 22 at 40. While Plaintiff's Grievance is clearly legible – Defendants reprinted the grievance in full in their materials supporting their Motion – Plaintiff's handwritten allegations exceeded the space provided on the grievance form by two lines. *Id*. at 4-5, 41. Plaintiff's Resubmitted Grievance is legible and fits within the space provided on the grievance form, in accordance with the deficiencies identified in the First Denial. *Id*. at 39. However, Plaintiff's Resubmitted Grievance was returned because "[a]fter further review," the grievance coordinator found that Plaintiff had "not demonstrated misapplication of departmental policies, rules or other directives . . . ." *Id*. at 38. In his Final Grievance, Plaintiff stated Defendants "did not follow the polic[ies] regarding deployment of chemical spray" and specifically cited to Or. Admin. R. § 291-013-005 through 291-013-0235 regarding use of force. *Id*. at 33. Oregon Administrative Rule § 291-013-0104(5) governs the use of chemical agents, which provides:

> Those affected by a chemical agent shall be permitted to wash their face, eyes, and other exposed skin areas, as soon as possible after the chemical agent has been used. Those exposed to a chemical agent in a closed area shall be permitted to move to an unaffected area as soon as possible after the chemical agent has been used.

PAGE 7 – OPINION AND ORDER

Or. Admin. R. § 291-013-0104(5)(f-g). Plaintiff's Final Grievance was again returned because he "still ha[d] not demonstrated misapplication of departmental policies, rule or other directives . . ." and the grievance contained "multiple issues." *Id*. at 31. But Plaintiff did cite the misapplication of a rule and included necessary facts and context in his grievance, including that he was denied a decontamination shower and proper medical evaluation and treatment, as he had been instructed to do in the Second Denial. *Id*. at 33, 38.

The Court notes that Plaintiff's Resubmitted and Final Grievances corrected the deficiencies identified in the First and Final Denials, respectively. Plaintiff also identified each of the named Defendants and their alleged actions in each of the submitted grievances, yet the grievance coordinator failed to identify the "multiple issues" deficiency until the Final Denial. Plaintiff, of course, could not resubmit his grievance to correct this additional deficiency because he had exhausted the number of times to resubmit his grievance. Where, as here, Plaintiff "took reasonable steps to exhaust but was prevented from doing so because of a mistake by prison officials in processing [his] grievance[s]," the Court finds that the grievance procedures were effectively unavailable to him. *Gomez v. Peters*, No. 2:18-CV-01607-HZ, 2020 WL 7647470, at *2 (D. Or. Dec. 23, 2020) (finding that administrative remedies were effectively unavailable to plaintiff who had not been properly decontaminated after being sprayed with a chemical agent because "[d]efendants cited an incorrect basis for denying [his] grievance"); *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.").

Defendants' argument that they are entitled to qualified immunity need not be addressed as Plaintiff is suing Defendants in their personal capacity only. ECF No. 27 at 6.

## CONCLUSION

For the reasons stated above, Defendants Motion for Summary Judgment, ECF No. 21, is DENIED.

**IT IS SO ORDERED.**

DATED this <u>11th</u> day of May, 2022.

                                                   /s/ Karin J. Immergut
                                                   Karin J. Immergut
                                                   United States District Judge